IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHARLES ANDERSON,

Plaintiff,

v.

I.C. SYSTEM, INC.,

Defendant.[1]

OPINION and ORDER

20-cv-263-jdp

---

Plaintiff Charles Anderson says that defendant I.C. System, Inc. violated the Fair Debt Collection Practices Act (FDCPA) by failing to report to credit-reporting agencies that Anderson disputed a debt that I.C. System was trying to collect. Both parties move for summary judgment. Dkt. 19 and Dkt. 27.

I.C. System contends that it is entitled to summary judgment for three reasons: (1) Anderson lacks standing to bring his claim because he hasn't alleged that he was harmed; (2) I.C. System didn't know, nor should it have known, that the debt was disputed; and (3) any mistake by I.C. System was a "bona fide error" that would shield it from liability under the FDCPA. Anderson has standing to bring this lawsuit because he has adduced evidence that his credit rating was harmed by I.C. System's actions. But the court agrees that I.C. System is entitled to summary judgment under the bona fide error defense. The court will grant I.C. System's motion, deny Anderson's, and close the case.

---

[1] The court has updated the caption to reflect defendant's name as indicated in its answer, Dkt. 7.

## UNDISPUTED FACTS

The following facts are undisputed except where noted.

Plaintiff Charles Anderson incurred a medical debt to Manatee Physician Alliance, LLC, which is not a party to this lawsuit. The parties don't specify when Anderson incurred this debt, but Manatee Physician Alliance gave the debt to defendant I.C. System for collection in October 2018. I.C. System reported the debt to credit-reporting agencies as unpaid in March 2019.

Anderson says that he disputed the debt on December 20, 2019, when Anderson's counsel, Matthew C. Lein, sent a letter to I.C. System. Dkt. 45-1. Lein wrote that he was representing Charles D. Anderson and Carol Ann Hamblin (Anderson's fiancée. Dkt. 23 (Anderson Dep. 7:16)). Lein identified Anderson and Hamblin by providing their Social Security numbers and their shared address in Hayward, Wisconsin. Lein wrote that the letter was to serve as "written notice that the above-referenced individual(s) is in fact and in law represented by this office for all debts that he or she may have." He also wrote that "the above-referenced individual(s) disputes the debt which you are attempting to collect." The letter didn't include any more information about what debt or debts were being disputed.

Based on the information provided by Lein, an I.C. System employee located two accounts associated with Hamblin and marked them as disputed. But I.C. System had more than 600 accounts with the name "Charles Anderson." The information in Anderson's account regarding the Manatee Physician Alliance debt didn't include his Social Security number or his middle initial, and it included addresses in Palmetto, Florida, and Stone Lake, Wisconsin, but not the Hayward address provided by Lein. I.C. System did not mark the Manatee Physician

Alliance account as disputed, and it didn't report to credit-reporting agencies that the debt was disputed.

Anderson filed this lawsuit in March 2020. He attached to his complaint redacted copies of his credit reports that included enough specific information to allow I.C. System to identify the Manatee Physician Alliance account. The day after Anderson filed this lawsuit, I.C. System asked the credit-reporting agencies to delete I.C. System's reporting of the Manatee Physician Alliance account, which the agencies did a few days later.

ANALYSIS

In his complaint, Anderson alleged that I.C. System violated several FDCPA provisions, but his arguments in his summary judgment briefs rely only on 15 U.S.C. § 1692e(8), which prohibits a debt collector from "[c]ommunicating . . . to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." At summary judgment, I.C. System makes arguments against Anderson's other FDCPA claims, but Anderson doesn't respond to those arguments in any of his briefs. So he has forfeited any claims other than his claim under § 1692e(8). *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment.").

Summary judgment is appropriate if the moving party shows that the material facts are not in genuine dispute and the party is entitled to judgment as a matter of law. On cross-motions for summary judgment, the court construes the facts and the reasonable inferences

drawn from them in the light most favorable to the nonmoving party. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017).

Standing is a jurisdictional question, so the court will address that issue first. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009).

## A. Standing

A plaintiff has standing to sue under Article III of the United States Constitution if he suffered an injury in fact that is both fairly traceable to the defendant's challenged conduct and likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). An injury in fact is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks omitted). As with any other factual proposition, the plaintiff must prove standing with specific facts at summary judgment. *Id.* at 561.

I.C. System contends that Anderson hasn't adduced any evidence that he suffered an injury in fact, even if I.C. System's conduct violated the FDCPA. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."). Anderson's only proposed fact on this point is the statement that he "suffered a concrete injury as a result of Defendant's omission to act." Dkt. 29, ¶ 15. This statement is a legal conclusion, not a fact, so it would not be sufficient to establish standing. But Anderson says in a declaration that his credit rating was lowered because I.C. System didn't inform the credit-reporting agencies that the debt was disputed. Dkt. 40, ¶ 10. This allegation is supported by copies of Anderson's Experian and TransUnion credit reports attached to his complaint, both of which are dated February 17, 2021, and both of which list the Manatee Physician Alliance debt as past due. Dkt. 1-4. Although Anderson hasn't provided copies of

4

credit reports without the Manatee Physician Alliance debt for comparison, I.C. System does not dispute the negative effect on his credit ratings.

The effect on Anderson's credit rating is a sufficient injury. In *Evans v. Portfolio Recovery Associates, LLC*, 889 F.3d 337 (7th Cir. 2018), the court of appeals held that a group of plaintiffs had standing to sue under the FDCPA based on their allegation that the defendant had failed to report disputed debts to a credit-reporting agency. The court held that the "real risk of financial harm caused by an inaccurate credit rating" was a sufficient injury to confer standing. *Id.* at 345 (quoting *Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 250 (5th Cir. 2017)). The court noted that "[a]n inaccurate credit report produces a variety of negative effects," including serving as "'a red flag to the debtor's other creditors and anyone who runs a background or credit check, including landlords and employers.'" *Id.* (quoting *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1082 (7th Cir. 2013)).

I.C. System's arguments for why Anderson lacks standing are unpersuasive. First, it contends that Anderson hasn't adduced admissible evidence that he disputed the Manatee Physician Alliance debt. The basis for this argument is unclear, as Lein's letter is evidence that Anderson disputed the debt. In support of its argument, I.C. System points to Anderson's testimony that he was unaware of what debt I.C. System was attempting to collect, he was unsure what the purpose of Lein's letter was, and he didn't know whether he owed a debt to I.C. System. *See* Dkt. 23 (Anderson Dep. 26:11–30:22). Perhaps I.C. System means to contend that this testimony shows that Anderson lacked a valid reason to dispute the debt. But the FDCPA "does not require an individual's dispute [to] be valid or even reasonable. Instead, the plaintiff must simply make clear that he or she disputes the debt." *Evans*, 889 F.3d at 347. Or perhaps I.C. System means to contend that Anderson lacks standing because he was unable to

articulate why he was harmed in his deposition. But Anderson expressly testified in his deposition that I.C. System's actions led to a "[l]ow credit score." Dkt. 23 (Anderson Dep. 43:11). Anderson may not fully grasp the nature of this lawsuit or the facts behind it, but that's his attorney's job, not his.

Second, I.C. System says that there's no "appreciable risk of harm" to Anderson based on a lower credit rating because he testified that he's "just not a person that applies for loans," Dkt. 23 (Anderson Dep. 18:21–19:1). But *Evans* doesn't require a plaintiff to show that he plans to apply for a loan. As the *Evans* court stressed, it's not only potential creditors that run credit checks, but also prospective landlords and employers, among others.

Third, I.C. System says that Anderson wasn't harmed because he testified in his deposition that he already had poor credit caused by unauthorized charges on his credit card made by his ex-girlfriend. But I.C. System doesn't contend that Anderson's credit rating was unaffected by the Manatee Physician Alliance debt, and it cites no authority for the proposition that a consumer with a low credit rating is unharmed if his rating is lowered further.

Fourth, I.C. System cites Anderson's fee agreement with Lein and John Steinkamp, Lein's co-counsel in this case. The agreement is dated March 17, 2020, about three months after Lein sent the letter to I.C. System and a few days before Anderson filed this lawsuit. Dkt. 56. I.C. System raises this issue for the first time in its reply brief in support of its motion for summary judgment, which prevents Anderson from addressing the issue. In any event, I.C. System fails to explain why the date on which Anderson signed a fee agreement has anything to do with his standing to bring this lawsuit. So the fee agreement doesn't support I.C. System's position, either.

Anderson has adduced evidence that his credit rating suffered because I.C. System failed to report that he disputed the Manatee Physician Alliance debt, so he has standing to bring this lawsuit.

## B. Bona fide error

I.C. System contends that it is entitled to summary judgment under the FDCPA's bona fide error defense, 15 U.S.C. § 1692k(c). Because the court agrees that any mistake by I.C. System was a bona fide error, it doesn't need to consider I.C. System's argument that Anderson has failed to show that I.C. System knew or should have known that he disputed the Manatee Physician Alliance debt.

The bona fide error defense requires I.C. System to establish three elements: (1) the presumed FDCPA violation was not intentional; (2) the presumed FDCPA violation resulted from a bona fide error; and (3) the defendant maintained procedures reasonably adapted to avoid any such error. *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005).

I.C. System has established each of these elements. First, I.C. System didn't intentionally violate the FDCPA when it failed to report the Manatee Physician Alliance debt as disputed to the credit-reporting agencies. I.C. System's chief compliance officer, Michelle Dove, says in a declaration that I.C. System had more than 600 accounts associated with the name Charles Anderson. Dkt. 45, ¶ 19. She explains that I.C. System didn't report the Manatee Physician Alliance debt as disputed because it was unable to locate Anderson's account based on the information that Lein provided. *Id.*, ¶ 16. The address provided in the letter was in Hayward, Wisconsin, but that address didn't appear in Anderson's Manatee Physician Alliance account, which included addresses in Palmetto, Florida, and Stone Lake, Wisconsin. *Id.*, ¶ 17. And although Lein provided Anderson's Social Security number, the

Manatee Physician Alliance account didn't have a Social Security number associated with it. *Id.* Anderson adduces no evidence to dispute any of these points. So I.C. System didn't know that the Manatee Physician Alliance debt was disputed when it failed to report it as disputed.

As for the second element, I.C. System's failure to locate the Manatee Physician Alliance account was a bona fide error. Dove says in her declaration that if I.C. System is unable to locate a matching account when a consumer attempts to dispute a debt, it normally issues what it calls a "can't find" letter to obtain more information from the consumer to identify the consumer's account. *Id.*, ¶ 23. She explains that I.C. System didn't issue a "can't find" letter in response to Lein's letter because I.C. System was able to identify two debts associated with Hamblin, which it promptly reported as disputed to the credit-reporting agencies. Lein's letter was ambiguous about whether both Hamblin and Anderson were disputing debts and about how many debts were in dispute: he wrote that "the above-referenced individual(s) disputes the debt which you are attempting to collect." Dkt. 45-1. Because the specific information that Lein provided for Anderson didn't match any of the "Charles Anderson" accounts in I.C. System's database, it was reasonable for I.C. System to conclude from the letter's ambiguous language that Anderson did not have a debt with I.C. System to dispute.

Anderson contends that I.C. System is barred from asserting that it committed a bona fide error because Dove testified in her deposition, "I don't think there was an error. I don't think that there's anything else that I.C. System could have done to locate Mr. Anderson's account using the information provided in the dispute letter." Dkt. 22 (Dove Dep. 88:17–20). In essence, Anderson argues that a debt collector cannot rely on the bona fide error defense unless it admits some level of carelessness or culpability. But Anderson cites no authority for

8

the proposition that a debt collector cannot rely on the bona fide error defense even if the debt collector contends that it did the best it could under the circumstances.

Anderson contends that I.C. System did, in fact, identify Anderson's account based on Lein's letter. Dkt. 50, at 8. He bases this contention on I.C. System's records, which show that a few days after Lein sent the letter, an I.C. System employee viewed Anderson's account but failed to mark it as disputed. But Anderson doesn't explain what information in Lein's letter would have allowed the employee to conclude that this account—one of more than 600 "Charles Anderson" accounts in the system—belonged to plaintiff. The mere fact that an employee viewed Anderson's account does not undermine I.C. System's contention that it committed a bona fide error in failing to identify Anderson's debt to Manatee Physician Alliance as disputed.

As for the third element, I.C. System had reasonable procedures in place to ensure that disputed debts are correctly matched with consumer accounts, flagged as disputed, and reported as disputed to credit-reporting agencies. Dove testified that I.C. System employees who review consumer correspondence are trained on how to use its computer system to locate the consumer's account. Dkt. 22 (Dove Dep. 60:11–14, 61:10–15). I.C. System employee Barbara Miller testified in a deposition that she "[s]earch[es] through our [computer] system to match any information that was provided in the letter." Dkt. 31 (Miller Dep. 34:11–13). She testified that to confirm that she has located the correct account, "something has to match. The address, the Social, the last four of the Social, if there was a partial account number, et cetera." *Id.* at 36:18–21. As already noted, if an employee is unable to identify an account based on the information provided by the consumer, I.C. System has a policy of sending a "can't find" letter to request further information.

After the consumer's account has been identified, I.C. System has a "Dispute Handling Policy" that describes when the consumer's debt should be flagged as disputed based on consumer correspondence, stressing that "[t]he consumer does not have to state the word 'dispute' for the issue to be considered a dispute" and providing multiple examples of what could constitute a dispute. Dkt. 45-7, at 2. The policy expressly instructs I.C. System employees to report any disputed debts to the credit-reporting agencies. *Id.*

I.C. System oversees this process by conducting separate weekly and monthly audits of each of its representatives. Its legal affairs supervisor audits at least two accounts per representative each week, and its credit reporting supervisor audits at least 20 accounts per representative each month. Dkt. 45-8, at 10. If employees are found to have violated I.C. System's correspondence policies, they are subject to disciplinary action. Dkt. 45, ¶ 25.

Anderson says that I.C. System's failure to send a "can't find" letter regarding Anderson's account in response to Lein's letter shows that I.C. System "failed to follow its own internal policies and procedures." Dkt. 50, at 13. But Lein's letter was ambiguous about whether Hamblin, Anderson, or both were disputing a debt, so it was reasonable for I.C. System to conclude that a "can't find" letter was unnecessary after it located two debts belonging to Hamblin.

Anderson also contends that I.C. System should have implemented a procedure to "requir[e] its clients to provide personal identifiers" such as Social Security numbers so that I.C. System could have identified Anderson's account based on his Social Security number. Dkt. 50, at 14. Elsewhere in his brief, he says that I.C. System "has no policies and procedures for how to handle a dispute letter with more than one consumer on it" and that I.C. System doesn't "permit [its] employees to simply call and request more information from the person

10

who sent the correspondence." *Id.* at 9. But the FDCPA "does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *Kort*, 394 F.3d at 539. Even if I.C. System could have prevented this particular error by implementing the types of procedures that Anderson describes, that isn't evidence that I.C. System's existing procedures are unreasonable. Anderson's counsel could easily have prevented the problem in several ways: by including more identifying information in his letter disputing the debt, such as Anderson's previous addresses; by specifically identifying the debt that Anderson disputed; by sending separate letters for Anderson and Hamblin; or by stating clearly in the letter that both Anderson and Hamblin had debts that they disputed. The FDCPA does not require I.C. System to anticipate every potential omission or ambiguity in a debt dispute letter.

Finally, Anderson contends that I.C. System doesn't give its employees "sufficient time to locate accounts." Dkt. 50, at 14. He cites deposition testimony from two I.C. System employees who said that they handle up to 120 accounts and take up to 20 telephone calls each day. He says that "[a]t this high rate of reviewing accounts, mistakes will almost certainly occur in locating accounts." *Id.* at 15. But the FDCPA anticipates that errors will occur, and under limited circumstances, some errors are excused. Even if I.C. System imposes an unreasonable workload on its employees, that workload isn't what caused the error at issue in this case. The problem wasn't that I.C. System's employees didn't have enough time to locate Anderson's account; it's that Lein's letter lacked enough information to allow them to identify the correct account, and it was ambiguous about how many debts were being disputed and who was disputing them.

I.C. System has adduced evidence to establish each of the elements of the bona fide error defense, and Anderson identifies no reason to call that evidence into question. I.C. System is entitled to summary judgment on Anderson's claim.

## ORDER

IT IS ORDERED that:

1. Defendant I.C. System, Inc.'s motion for summary judgment, Dkt. 19, is GRANTED.

2. Plaintiff Charles Anderson's motion for summary judgment, Dkt. 27, is DENIED.

3. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered April 13, 2021.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge